UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRIS TEMPLETON,<br><br>      Plaintiff,<br><br>v.<br><br>THE BISHOP OF CHARLESTON, a Corporation Sole,<br><br>      Defendant. | NO. 2:20-mc-00083-RSL<br><br>DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENA AND SUBPOENA FOR PRODUCTION OF DOCUMENTS<br><br>**Noted for Consideration:**<br>**October 30, 2020** |

  Pursuant to Rule 45(a)(iii) and 45(b)(i), Fed. R. Civ. P., Defendant, The Bishop of Charleston, a Corporation Sole, moves the Court to quash the subpoena for production of documents and for deposition testimony issued by Plaintiff's counsel to Fr. Timothy Watters. The subpoena specifies that compliance is to take place in the Western District of Washington.

  Fr. Timothy Watters remains a priest of the Diocese of Charleston. He has been on medical leave since February 1998, and currently resides in Bellingham, Washington. The subpoena was issued from the District of South Carolina, with compliance to occur in the Western District of

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 1
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Washington. In written discovery responses, Fr. Watters was identified by *plaintiff Chris Templeton* as a potential witness, though Fr. Watters has no knowledge regarding the facts of the underlying case, nor does he possess any information that is relevant to plaintiff's case.

Bishop of Charleston, a Corporation Sole ("Diocese") moves to quash Plaintiff's deposition subpoena and subpoena for production of documents (Christie Decl., Ex. 1) pursuant to Rule 45(a)(iii) and 45(b)(i), Fed. R. Civ. P. The information sought by Plaintiff is subject to privilege and is confidential. Inquiry into the matters sought would violate the Diocese's First Amendment religious liberties and could violate the Religious Freedom Restoration Act ("RFRA"). The Diocese has not waived any privilege regarding these matters, and expressly reserves all rights under RFRA. Furthermore, Fr. Watters signed a comprehensive confidentiality agreement that compliance with Plaintiff's subpoena would cause him to violate and subject him to an award of liquidated damages.[1]

### I. BACKGROUND

Fr. Timothy Watters remains a priest of the Diocese of Charleston. He has been on medical leave since February 1998, and currently resides in Bellingham, Washington. Fr. Watters is a canon lawyer and served in various capacities as a canon lawyer for the Diocese of Charleston between 1976 and at least 1988. He earned a degree in canon law from Catholic University of America in 1976 and a Master's in Canon Law from St. Paul University in 1985. Between 1976

---

[1] The terms of the agreement are themselves confidential. The Diocese will produce a copy for *in camera* review if the Court so orders. In that event, the Diocese insists that the agreement be filed under seal.

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 2
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

and 1982 he was *Vice Officialis* of the Diocesan Tribunal (the ecclesiastical court). Beginning in 1983, Fr. Watters was named *Officialis*, or the Judicial Vicar, of the Tribunal – essentially chief judge of the ecclesiastical court. Throughout, Fr. Watters was a judge of the ecclesiastical court. Importantly, any disciplinary or other administrative proceeding under canon law involving a priest of the Diocese would fall under the jurisdiction of the Diocesan Tribunal. Under Canon 1420, ¶ 2, the Judicial Vicar constitutes one tribunal with the Bishop. *See Can. 1420, ¶ 2.* Those canonical proceedings are confidential and privileged. Fr. Watters also served as an important advisor to the Bishop of Charleston, for example as a member of the Presbyteral Council as well as the Episcopal Vicar of the Piedmont Viacariate.[2]

## II. ARGUMENT AND AUTHORITIES

A. THE RELIGION CLAUSES OF THE FIRST AMENDMENT PROHIBIT ENTANGLEMENT BY CIVIL COURTS IN ECCLESIASTICAL MATTERS.

The First Amendment's Religion Clauses – the Establishment Clause and the Free Exercise Clause – prevent use of the power of the government and the civil courts in such a way that the State becomes entangled in, and to intrudes upon, the First Amendment liberties of religious organizations. Compelled disclosure of private deliberations within a religious organization severely undermines a panoply of First Amendment rights, including rights to freedom of assembly and church autonomy, as well as against government entanglement in religion.[3] This evidentiary privilege for First Amendment interests "advance[s] a greater societal

---

[2] Fr. Watters ecclesiastical positions are included in the *Official Catholic Directory*. (Christie Decl., Ex. 2.)
[3] *United States v. Craig*, 528 F.2d 773, 778 (7th Cir. 1976).

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 3
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

good"[4]  The First Amendment protects more than discussions of doctrine and faith, but include matters of church discipline, organization, administration, internal deliberations, and the like. Because of the importance of the First Amendment interests, the breadth of its protections for religious organizations reach farther than protections afforded to other bodies, even governmental agencies.  With this very broad protection of religious liberty, the ecclesiastical deliberative process must be granted broad protection from interference by the government – either directly, or with its assistance through the subpoena power, or compelled discovery.

The Religion Clauses protect against government interference in internal church affairs and guarantee heightened independence for churches "from secular control or manipulation."[5]  The First Amendment's guarantees of religious liberty also provide procedural protections to safeguard the church from unnecessary entanglement with the State, since the "very process of inquiry" can "impinge on the rights guaranteed under the Religion Clauses."[6]  As the United States Supreme Court held in *Serbian Eastern Orthodox Diocese v. Milivojevich*, "a court's detailed review of the evidence regarding internal church procedures [is] impermissible under the First Amendment."[7]

The First Amendment's procedural protections apply to interference that can arise through the use of government power, including through civil discovery and issuance of subpoenas, to pry

---

[4] *In re Bexar Cty Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 188 (Tex. 2007).
[5] *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 186 (2012).
[6] *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979); *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 717-718 (1976).
[7] *Serbian Eastern Orthodox Diocese*, 426 U.S. at 717-718.

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 4
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

into the internal affairs of a church.[8] As the Supreme Court cautioned in *Buckley v. Valleo*, "governmentally compelled disclosure, in itself, can seriously infringe on privacy of association and belief, guaranteed by the First Amendment."[9] Even a judicial attempt to parse out the internal communications of a religious organization to discern which are "facts" and which are "religious" would be "tantamount to judicially creating an ecclesiastical test in violation of the First Amendment."[10] The Free Exercise and Establishment clauses of the First Amendment afford churches broad independence "from secular control or manipulation."[11] Civil courts exercise no jurisdiction over church discipline or ecclesiastical government and cannot delve into those matters without violating the First Amendment rights of churches.[12] The "very process of inquiry" into such matters can "impinge on the rights guaranteed by the Religion Clauses."[13]

      Churches are guaranteed autonomy from governmental manipulation, control, or second-guessing. Under the church autonomy doctrine, matters of church government and administration

---

[8] *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (the judicial subpoena power is subject to constitutional limitations).
[9] *Buckley v. Valleo*, 424 U.S. 1, 64 (1976).
[10] *Whole Women's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018). (The Supreme Court has noted that "it is a significant burden on a religious organization to require it, on pain of substantial liability, to predict which of its activities a secular court will consider religious. ... [A]nd an organization might understandably be concerned that a judge would not understand its religious tenets and sense of mission.") *quoting Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 336 (1987).
[11] *Hosanna-Tabor,* 556 U.S. at 186.
[12] *Watson v. Jones*, 80 U.S. 679, 733 (1871).
[13] *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979)

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 5
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

are simply beyond the purview of civil authorities.[14]  This protection extends to internal church deliberations and decision-making.[15]  Confidential internal communications of church officials and advisors have long enjoyed the protections of the First Amendment, and compelled disclosure of those deliberations and communications would substantially infringe on the liberties guaranteed under the Religion Clauses.[16]  As Judge Wilkinson of the Fourth Circuit noted, "protracted legal process pitting that state and church as adversaries" often results from making church personnel and records "subject to subpoena, discovery . . . and the full panoply of legal process designed to probe the mind of the church."[17]

It is widely recognized that the church autonomy doctrine protects against two types of mischief, either of which "alone is enough to bar the involvement of the civil courts."[18]  The first concern arises where the investigation itself "would necessarily intrude into church governance in a manner that would be inherently coercive," even if the alleged subject of inquiry "were purely

---

[14] *McClure v. Salvation Army*, 460 F.2d 553 (5th Cir. 1972); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 171 (5th Cir. 2012); *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 658 (10th Cir. 2002).
[15] *Hosanna-Tabor*, 565 U.S. 171 (First Amendment protections for internal church governance and decisions).
[16] *See Universidad Cent. De Bayamon v. NLRB*, 793 F.2d 383, 401-02 (1st Cir. 1985) (*en banc*); *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979) (compelled disclosure of internal church communications would "substantially infringe" on church autonomy); *McRaney v. North Am. Mission Bd. of the S. Baptist Convention*, 2018 WL 5839678 (N.D. Miss. Nov. 7, 2018) (quashing a subpoena under ministerial exception and church autonomy doctrines); *also Presbyterian Church (USA) v. Edwards*, ---S.W. 3d---, 2018 WL 4628449, at *3 (Ky. Sept. 27, 2018)(reversing trial court's discovery order because church should not be subjected to the far-reaching discovery permitted by the order).
[17] *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985).
[18] *Combs v. Cent. Tex. Annual Conf. of United Methodist Church*, 173 F.3d 343, 350 (5th Cir. 1999).

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 6
(Case No. _____)

**Christie Law Group, PLLC**
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
206-957-9669

nondoctrinal."[19]  Here, using the judicial power to compel "investigation and review of such matters of church administration and government … could only produce by its coercive effect the very opposite of the separation of church and State contemplated by the First Amendment."[20]

Churches facing such probes would inevitably make internal church decisions "with an eye to avoiding litigation or bureaucratic entanglement rather than upon the basis of their own personal and doctrinal assessments."[21]  That would reflect an unconstitutional "chilling of the decision making process" for churches.[22]

The second concern is that secular authorities would be involved in evaluating or interpreting religious matters.[23]  But that is itself a forbidden evaluation of religious doctrine. Indeed, by what criteria or authority can a judge gainsay what the Bishop believes would affect the mission of the Church?[24]  Courts have thus repeatedly refused to allow governmental inquiries into internal church affairs.  For example, the First Circuit rejected the government's "compelled disclosure" of a church school's records, finding that the church's "ability to make decisions" regarding its "mission of religious education" would suffer "chilling" and be "substantially infring[ed]."[25] In so holding, the First Circuit rejected the reasoning that compelled disclosure

---

[19] *Id.*
[20] *McClure*, 460 F.2d at 560.
[21] *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d at 1171.
[22] *Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1264 (10th Cir. 2008) (McConnell, J.); accord *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 400 (Tex. 2007) (same).
[23] *Combs*, 173 F.3d at 350.
[24] *See Weaver*, 534 F.3d at 1265 (government "has neither competence nor legitimacy" in such matters); *Tagore v. U.S.*, 735 F.3d 324, 328 (examining religious beliefs requires "a light touch" and "judicial shyness").
[25] *Surinach*, 604 F.2d at 78.

DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENA AND SUBPOENA FOR PRODUCTION OF DOCUMENTS - 7
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

was allowed "because the information solicited did not probe into doctrinal matters."[26] Similarly, the D.C. Circuit rejected an NLRB inquiry procedure that allowed it to require religious schools to answer questions about their curricular and policy choices and respond to doubt about their religious devotion.[27]

The Supreme Court has long recognized that "state inspection" of religious organizations "is fraught with the sort of entanglement that the Constitution forbids."[28] "It is well established … that courts should refrain from trolling through a person's or institution's religious beliefs."[29] Indeed, authorizing production of the Bishop's private deliberations and discussions with advisors would result in the Court's inspecting and evaluating internal religious documents of the church, "trolling through" them for the Bishop's internal deliberations on public issues, and potentially supplanting the Bishop's decisions with those of a civil court.

Indeed, part of the reason for avoiding entanglement is to prevent churches' "personnel and records" from "becom[ing] subject to subpoena … the full panoply of legal process designed to probe the mind of the church."[30] This kind of entanglement can happen even in the absence of direct conflict between church and state. "[E]ven if government policy and church doctrine endorse the same broad goal, the church has a legitimate claim to autonomy in the elaboration and pursuit of that goal."[31] Thus, even an assessment of the documents reviewed *in camera* is of no

---

[26] *Id.* at 76.
[27] *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1343 (D.C. Cir. 2002).
[28] *Lemon v. Kurtzman*, 403 U.S. 602, 619-20 (1971).
[29] *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality).
[30] *Rayburn*, 772 F.2d at 1171.
[31] *Id.*

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 8
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

moment for entanglement purposes; it jeopardizes the Bishop's autonomy all the same. The "very process of inquiry" into a Bishop's deliberations or concerns "impinge[s] on rights guaranteed by the Religion Clauses."[32]

In this case, Fr. Watters was an important Diocesan official and advisor to the Bishop. His discussions with his Bishop undoubtedly involved a wide variety of matters of concern to the Church, its administration, and matters of Church discipline in his role as Judicial Vicar, judge of the ecclesiastical court, and member of the Bishop's *curia*. The First Amendment shields these discussions broadly and generally from compelled disclosure. Additionally, a civil court is not permitted to evaluate whether some discussions are religious and some not, lest it violate the First Amendment further. Because the subpoena cannot be enforced without overtly trampling the religious liberties of the Diocese, the subpoena must be quashed.

Furthermore, Fr. Watters' role as canon lawyer and judge of the ecclesiastical court implicates the confidential and privileged advice he provided to his Bishop. Fr. Watters would have either been one of the people involved in making decisions regarding Church discipline and administration, or, he would have served as one of the Bishop's close advisor on those matters. The civil courts cannot second-guess the decisions of the Church regarding any matter of discipline – and the civil courts must abstain from subjecting religious organizations to inquiries that violate the First Amendment.

/ / /

---

[32] *Little v. Wuerl*, 929 F.2d 944, 949 (3d Cir. 1991) (quoting *Catholic Bishop*, 440 U.S. at 502); accord *Bryce*, 289 F.3d at 658.

DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENA AND SUBPOENA FOR PRODUCTION OF DOCUMENTS - 9
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

B. **IN ADDITION TO THE SUBSTANTIVE AND STRUCTURAL FIRST AMENDMENT PROTECTIONS AFFORDED TO THE CHURCH, FR. WATTERS' DELIBERATIONS WITH HIS BISHOP FALL WITHIN SOUTH CAROLINA PRIVILEGE, AND THE SUBPOENA MUST BE QUASHED.**

South Carolina Code Ann. § 19-11-90 provides:

> In any legal or quasi-legal trial, hearing or proceeding before any court, commission or committee no regular or duly ordained minister, priest, or rabbi shall be required, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline of his church or religious body.  This prohibition shall not apply to cases where the party in whose favor it is made waives the rights conferred.[33]

Any discussions or deliberations between the Bishop of Charleston and the Judicial Vicar of the Diocese regarding matters of church governance or discipline would be confidential and would clearly fall within the broad ambit of the statute.  In an analogous case, also interpreting a statutory privilege, the federal district court for the District of Utah interpreted a similar statute to protect communications (1) made to a clergyperson; (2) in his or her spiritual or professional capacity; and (3) with a reasonable expectation of privacy.[34]  Even though the Utah statute specifically uses the term "confession," the Court did not restrict the privilege to penitential communications.  Rather, the communications simply had to be entrusted to the clergyperson with an expectation that it would be held confidential.

---

[33] S.C. Code Ann. § 19-11-90.
[34] *Scott v. Hammock*, 133 F.R.D. 610, 616 (D.Utah 1990).  Specifically, Utah Code Ann. § 78-24-8(3) provided:
> A clergyman or priest cannot without the consent of the person making the confession be examined as to any confession made to him in his professional character in the course of the discipline enjoined by the church to which he belongs.

DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENA AND SUBPOENA FOR PRODUCTION OF DOCUMENTS - 10
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Here, virtually any internal discussions or deliberations regarding matters that are important to the Church between a Bishop and his *curia* would be confidential unless and until the Bishop makes a public announcement. This is especially so for any communications between the Bishop and his Judicial Vicar regarding matters of church discipline or administration, as the two have largely coextensive authority under Canon 1420, ¶ 2. The Bishop and Judicial Vicar constitute one tribunal, and a judgment given by the Tribunal may not be appealed to the Bishop and the Bishop may not alter the judgment.

Because the confidential advice and discussions of the Bishop and Judicial Vicar are statutorily privileged, the subpoena must be quashed pursuant to Rule 45(b).

C. **FR. WATTERS ENTERED INTO A BROAD RANGING CONFIDENTIALITY AGREEMENT WITH THE DIOCESE WHICH PRECLUDES HIS TESTIMONY.**

In February 1998, Fr. Watters entered into an agreement with the Diocese that represented a comprehensive resolution of many issues that had arisen between them. Because of the broad bilateral confidentiality provisions, the Diocese can only provide a copy of the Agreement to the Court after being ordered to do so. However, the Diocese does not waive the confidentiality provisions of the agreement and permitting Fr. Watters to testify on deposition would result in exposing him to liability and liquidated damages for breach of that agreement. Under Rule 45(b)(3)(A)(iii), the subpoena issued to Fr. Watters must be quashed.

## CONCLUSION

For the foregoing reasons, Plaintiff Templeton's subpoena for deposition testimony and production of documents should be quashed, and Plaintiff should be prohibited from obtaining any

DEFENDANTS' MOTION TO QUASH
DEPOSITION SUBPOENA AND SUBPOENA FOR
PRODUCTION OF DOCUMENTS - 11
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

such testimony.

DATED this 15th day of October, 2020.

CHRISTIE LAW GROUP, PLLC

By    */s/ Robert L. Christie*
ROBERT L. CHRISTIE, WSBA #10895
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
Phone: 206-957-9669
Email: bob@christielawgroup.com
Attorney for Defendant


TURNER PADGET GRAHAM & LANEY P.A.

By    */s/ Richard S. Dukes, Jr.*
Richard S. Dukes, Jr., (*pending pro hac vice*)
40 Calhoun Street, Suite 200 (29401)
P.O. Box 22129
Charleston, South Carolina 29413
Telephone: (843) 576-2810
Facsimile: (843) 577-1646
Email: rdukes@turnerpadet.com
Attorney for Defendant

DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENA AND SUBPOENA FOR PRODUCTION OF DOCUMENTS - 12
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system when will send notification of such filing to the following:

Mark A. Tate
TATE LAW GROUP, LLC
25 Bull Street, 2nd Floor
Savannah, GA 31401
Phone: 234-3030
Email: marktate@tatelawgroup.com
*Attorney for Plaintiff*
Via Email

Charles Henshaw, Jr.
FURR & HENSHAW
1900 N. Oak Street
Myrtle Beach, SC 29578
Phone: 843-626-7621
Email: Charles.henshaw@fholaw.com
*Attorney for Plaintiff*
Via Email

CHRISTIE LAW GROUP, PLLC

By    */s/ Robert L. Christie*
       ROBERT L. CHRISTIE, WSBA #10895
       2100 Westlake Avenue N., Suite 206
       Seattle, WA 98109
       Phone: 206-957-9669
       Email: bob@christielawgroup.com

DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENA AND SUBPOENA FOR PRODUCTION OF DOCUMENTS - 13
(Case No. _____)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669