1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10  CHRIS TEMPLETON,                    CASE NO. C20-1578 MJP

11              Plaintiff,              ORDER DENYING MOTION TO
                                        QUASH
12       v.

13  THE BISHOP OF CHARLESTON,

14              Defendant.

15

16       This matter comes before the Court on Defendants Motion to Quash. (Dkt. No. 1.)

17  Having reviewed the Motion, Opposition (Dkt. No. 4), Reply (Dkt. No. 6), Declaration of

18  Timothy Watters (Dkt. No. 7), and all[1] supporting materials, the Court DENIES the Motion.

19                                   **BACKGROUND**

20       Plaintiff Chris Templeton's lawsuit centers on his allegations that in 1988 he was raped

21  multiple times as a minor by two priests in a church owned by Defendant Bishop of Charleston.

22  Plaintiff's lawsuit is pending in the United States District Court for South Carolina, and served a

23  _____

24  [1] The Court has not considered Plaintiff's Surreply, which did not follow with the Local Rules.

1  subpoena on Fr. Timothy Watters' to obtain his testimony and records about the two priests who

2  allegedly raped him: Wayland Brown and Raymond DuMouchelle. Watters resides in this

3  District and was a canon lawyer until 1988 with the Diocese in South Carolina. Plaintiff's

4  "counsel has been informed that Watters has information about meetings with Bishop

5  Unterkoeffler in 1987 in which the Bishop discussed his awareness of the problems presented by

6  what the Bishop referred to as the 'nest of priest pedophiles' in the Diocese." (Dkt. No. 4 at 3.)

7  Plaintiff argues that Watters "has information about the Bishop's authority at that time for

8  making assignments of and supervising priests and other personnel of the Diocese." (Id.)

9        Watters has filed a declaration stating that he has no responsive documents and no

10 information "regarding the accusations against Fr. DuMouchel [sic], . . . [or] any information

11 regarding Chris Templeton and his claims." (Watters Decl. at ¶¶ 4, 7 (Dkt. No. 7).) Watters avers

12 that he has no "information regarding Wayland Yoder Brown's criminal activities" but admits

13 that he "met Wayland Brown briefly in 1977 . . . [and] recall[s] him only because he used sexual

14 innuendo as a form of humor, which was unusual for a priest." (Id. ¶ 5.) He then states that he is

15 "not aware of any canonical or ecclesiastical proceeding regarding Fr. DuMouchel [sic] or

16 Wayland Brown during the years I was appointed to the Diocesan Tribunal." (Id. ¶ 6.)

17 **ANALYSIS**

18       Defendant makes three overreaching arguments in support of its Motion, which the Court

19 construes as applying only to the testimony sought, given Watters' declaration that he has no

20 responsive documents. First, Defendant argues that the First Amendment bars the subpoena in its

21 entirety. Second, Defendant argues that the subpoena should be quashed because a South

22 Carolina statute makes any communications between Watters and the Bishop of Charleston

23 privileged and non-discoverable. Third, Defendant argues that there is a confidential agreement

24

1 | between Watters and Defendant that prevents his testimony. None of these arguments justifies
2 | quashing the subpoena.
3 | **A.     First Amendment**
4 |       Defendant argues that any discussions Watters had with the Bishop "undoubtedly
5 | involved a wide variety of matters of concern to the Church, its administration, and matters of
6 | Church discipline in his role as Judicial Vicar, judge of the ecclesiastical court, and member of
7 | the Bishop's curia." (Dkt. No. 1 at 9.) According to Defendant, the First Amendment shields any
8 | information Watters may have relevant to Plaintiff's case and compels the Court to quash the
9 | subpoena in full. Defendants do not cite any authority for this broad proposition, and the
10 | Supreme Court and out-of-circuit authority cited does not bar inquiry into Watters' knowledge
11 | about the two alleged pederast priests. As Plaintiff argues, Defendant's Bishop has already been
12 | deposed without objection on a number of topics about child abuse in the Diocese, and
13 | Defendant has produced personnel files and internal communications about DuMouchelle.
14 |       In its reply, Defendant claims that allowing any questions about internal deliberations is
15 | improper. (Reply at 3 n.7 (Dkt. No. 6 at 3).) But the cases cited merely hold that the First
16 | Amendment prevents the Court from ruling on the legality of internal church decision-making as
17 | to personnel matters or matters of faith. (Id.) The Court is not asked to make any such rulings in
18 | determining the present Motion.
19 |       Defendant also claims that because Watters was a canon lawyer and judge of the
20 | ecclesiastical court, his communications with the Bishop were confidential and privileged. (Dkt.
21 | No. 1 at 9.) There is no authority cited to support the assertion that all communications with the
22 | Bishop were privileged. Watters is not an attorney. Even if such a privilege existed, it is not clear
23 | that Watters' potential testimony would all concern "privileged" communications with the
24 |

1 | Bishop. The Court finds no valid basis to conclude the First Amendment serves as a basis to
2 | quash the subpoena.

3 | **B.      South Carolina's Privilege Statute**

4 | Defendant invokes a South Carolina statute that prevents a priest from being compelled
5 | to disclose "any confidential communication properly entrusted to him in his professional
6 | capacity" that was "necessary and proper to enable him to discharge the functions of his office
7 | according to the usual course of practice or discipline of his church or religious body." S.C. Code
8 | Ann. § 19-11-90.

9 | It is possible that some of the testimony from Watters could fall under this privilege if the
10 | answer would reveal confidential communications that were entrusted to him that were necessary
11 | and proper to enable him to do his job. But this possibility does not merit quashing the subpoena
12 | in its entirely. There are many factual issues that Watters can testify to that would not fall under
13 | this statute, including his knowledge about DuMouchelle and Brown about which he has already
14 | filed a declaration with the Court. And as Plaintiff points out "[w]hether communications known
15 | to Watters were 'necessary and proper' to enable discharge of his functions can be determined
16 | only upon questioning at deposition." (Dkt. No. 4 at 5-6.) Defendant can make objections to
17 | specific questions posed, which can then be resolved on a full record.

18 | **C.      Confidentiality Agreement**

19 | Defendant argues that Watters signed a confidentiality agreement with Defendant that
20 | contains a provision exposing Watters to liability and liquidated damages if he testifies. (Dkt.
21 | No. 1 at 11.) Defendant has provided no declaration to support this attorney argument. (Id.) The
22 | Court finds no merit in this unsupported argument. Watters himself makes no mention of it in his

declaration, and the Court doubts whether any provision preventing Watters from testifying in this matter could withstand judicial scrutiny.

**D.     Transfer**

Plaintiff requests that the Court transfer this motion to the District Court for South Carolina under Rule 45(f). Defendant does not respond to this request.

A motion to quash can be transferred to the court originating the subpoena if "the person subject to the subpoena consents or if the court finds exceptional circumstances." The comments to Rule 45(f) state that "[i]n some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 Adv. Committee Note.  "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."

The Court does not find exceptional circumstances here warrant transfer of the Motion to Quash. The Parties have provided no evidence that the Court's limited decision in resolving this Motion would disrupt the District Court of South Carolina's management of the litigation.

## CONCLUSION

Defendant's overreaching and unsupported arguments do not provide a valid basis on which to quash the subpoena. Plaintiff may depose Watters and obtain his testimony.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 14, 2020.

Marsha J. Pechman
United States District Judge